O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

Charles Viale,                                           Case No. CV 11-00689 ODW (PJWx)

              Plaintiff,                            Order Determining Standard of Review

v.

Aetna Life Insurance Company; and
DOES 1 through 50, inclusive,

              Defendants.

## I.   INTRODUCTION

Pending before the Court is Defendant, Aetna Life Insurance Company's ("Defendant"), July 13, 2011 Motion Re: Standard of Review. (Dkt. No. 27.) Plaintiff, Charles Viale ("Plaintiff"), filed a Response in Opposition on July 27, 2011, to which Defendant Filed a Response in Support. (Dkt. Nos. 29, 30.) The Court has also considered Plaintiff's July 13, 2011 Opening Brief Re: Standard of Review. (Dkt. No. 26.) After careful consideration of the arguments in support of and in opposition to the instant Motion, the Court deems the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. For the reasons discussed below, the Court determines that the appropriate standard of review is *de novo*.

## II.   BACKGROUND

This case arises under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132 *et seq.*  Plaintiff is an eligible participant and beneficiary under the terms and conditions of an ERISA health insurance policy entitled Aetna Healthfund Open Access Managed Choice, group policy number GP-705050 (the "Plan").  (SAC ¶ 8.) The Plan was purchased by Plaintiff's employer, Goldrich and Kest Industires, LLC, and issued and administered by Defendant, who is both the insurer and administrator of the Plan.  (SAC ¶ 10.)

While covered under the Plan, Plaintiff was diagnosed with a pancreatic tumor and subsequently began chemotherapy under the medical supervision of an oncologist, Dr. William H. Isacoff, M.D. ("Dr. Isacoff").  (SAC ¶ 11.)  During the course of Plaintiff's treatment, Dr. Isacoff recommended that Plaintiff undergo chemotherapy treatment, with a regimen comprised of 5-fluorourcil, Abraxane, Eloxatin, and a drug called Bevacizumab, which is marketed as Avastin ("Avastin") (collectively, the "Avastin regimen").  (SAC ¶ 13.) Defendant subsequently denied coverage for use of Avastin as part of the chemotherapy regimen.  (SAC ¶ 14.)  In response to this denial, Dr. Isacoff sent a letter to Defendant describing his use of Avastin in conjunction with Plaintiff's treatment and the improvement in Plaintiff's condition since administering the Avastin regimen. (SAC ¶ 14.) The letter further stated that, in Dr. Isacoff's professional opinion, Avastin was necessary for Plaintiff's further treatment.  (*Id.*)

Thereafter, Plaintiff formally appealed the denial of his claim in writing.  (SAC ¶ 15.)  The appeal included a written explanation by Dr. Isacoff of the scientific and medical reasons behind his determination that Avastin was a necessary component of Plaintiff's treatment, Dr. Isacoff's description of Plaintiff's results from the Avastin regimen, and a clinical study concluding that Avastin was both "safe and effective" for patients with advanced pancreatic cancer, such as Plaintiff.  (SAC ¶¶ 15, 16.) Defendant subsequently denied Plaintiff's appeal, stating that it considered Avastin "experimental and investigational" and that "its effectiveness . . . ha[d] not been established."  (SAC

1   ¶ 18.)  Plaintiff then requested a second level of appeal, which was also denied.  (SAC
2   ¶¶ 19, 20.)

3       Based on these events, Plaintiff filed the instant ERISA recovery action, seeking
4   judicial review of Defendant's alleged wrongful denial of his claim for health benefits.
5   Before conducting this review, however, the Court must determine the appropriate
6   standard of review.

7                           **III.   LEGAL STANDARD**

8       "To assess the applicable standard of review, the starting point is the wording of
9   the plan." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 962-63 (9th Cir. 2006)
10  (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989)). "Depending
11  upon the language of an ERISA plan, a district court reviews a plan administrator's
12  decision to deny benefits either *de novo* or for abuse of discretion." *Ingram v. Martin*
13  *Marietta Long Term Disability Income Plan for Salaried Employees or Transferred GE*
14  *Operations*, 244 F.3d 1109, 1112 (9th Cir. 2001).  *De novo* is the default standard of
15  review, *Abatie*, 458 F.3d at 963, and "is appropriate 'unless the benefit plan gives the
16  administrator or fiduciary discretionary authority to determine eligibility for benefits or
17  to construe the terms of the plan.'" *Ingram*, 244 F.3d at 1112 (quoting *Firestone*, 489
18  U.S. at 115). "If de novo review applies, no further preliminary analytical steps are
19  required. The court simply proceeds to evaluate whether the plan administrator correctly
20  or incorrectly denied benefits, without reference to whether the administrator operated
21  under a conflict of interest." *Abatie*, 458 F.3d at 963.

22      If, however, the plan confers "discretionary authority as a matter of contractual
23  agreement, then the standard of review shifts to abuse of discretion." *Id.* (citing
24  *Firestone*, 489 U.S. at 115). "[F]or a plan to alter the standard of review from the default
25  of de novo to the more lenient abuse of discretion, the plan must *unambiguously* provide
26  discretion to the administrator." *Id.* (citing *Kearney v. Standard Ins. Co.*, 175 F.3d 1084,
27  1090 (9th Cir. 1999)) (emphasis added).  The burden is on the administrator to show that
28  the plan provides it discretionary authority in order to get any judicial deference to its
    decision." *Ingram*, 244 F.3d at 1112 (quoting at *Kearney*, 175 F.3d at 1089).

## IV. DISCUSSION

The Court now examines the text of the Plan to determine whether it "unambiguously" states that Defendant has "discretionary authority" in making benefits decisions. The Plan states, in pertinent part:

> **Claim determinations; ERISA Claim Fiduciary.** For the purpose of section 503 of Title I of the Employee Retirement Income Security Act of 1974, as amended (ERISA), We are a fiduciary with authority to review all denied claims for benefits under this Policy. This includes, but is not limited to, the denial of certification of the **medical necessity** of hospital or medical treatment. In exercising such fiduciary responsibility, We shall ensure that employees and beneficiaries receive the benefits to which they are entitled. We shall be deemed to have properly exercised such authority unless We abuse our discretion by acting arbitrarily and capriciously. We have the right to adopt reasonable policies, procedures, rules, and interpretations of this Policy to promote orderly and efficient administration.

(Menchaca Decl., Exh. A at bates-stamped AET/VIALE 0025.)[1] While Defendant argues that such language unambiguously confers the requisite discretion, the Court finds otherwise.

There are "no 'magic words' that conjure up discretion on the part of the plan administrator." *Abatie*, 458 F.3d at 963 (quoting *Sandy v. Reliance Standard Life Ins. Co.*, 222 F.3d 1202, 1207 (9th Cir. 2000)). On one hand, plan wording that "grant[s] the power to interpret plan terms and to make final benefits determinations [] confers discretion on the plan administrator." *Id.* On the other hand, however, "ERISA plans are insufficient to confer discretionary authority on the administrator when they do not grant any power to construe the terms of the plan." *Id.* at 964.

Here, the Plan never explicitly confers upon Defendant the authority to interpret the Plan's terms. While the Plan grants Defendant authority to review denied claims, including certifications of medical necessity, it does not unambiguously grant Defendant the right to determine eligibility of those claims *at the outset*. Rather, Defendant's authority applies to claims that have already been denied. This necessarily means that an initial eligibility review has already been conducted before the claim reaches

---

[1]   Per the policy's terms, "We" refers to Defendant. (*See* Menchaca Decl., Exh. A at bates-stamped AET/VIALE 0011.)

Defendant. Yet, the Plan is silent as to the entity responsible for conducting such an initial review. This alone renders the Plan ambiguous in this respect.

The Plan in the instant case is akin to the plan at issue in *Ingram*, which provided that "[t]he carrier solely is responsible for providing the benefits under this Plan"; "[t]he carrier will make all decisions on claims"; and "the review and payment or denial of claims and the provision of full and fair review of claim denial pursuant to [ERISA] shall be vested in the carrier." 244 F.3d at 1112-13. In reviewing the language in *Ingram*, the Ninth Circuit found that discretion was not unambiguously conferred because the plan's terms merely explained that the carrier would pay benefits and administer the plan, but failed to bestow upon the carrier the power to interpret the plan. The same is true here. Defendant can administer the Plan by "adopt[ing] reasonable policies, procedures, rules, and interpretations of this Policy to promote orderly and efficient administration." Yet, while Defendant may review denied claims, it has not been clearly delegated the authority to interpret the initial eligibility of those claims or to otherwise interpret the Plan's terms.

Indeed, upon examining plan terms that have been found to unambiguously confer discretion upon an administrator, it is clear that the Plan lacks the requisite reservation of discretion. *See Abatie*, 458 F.3d at 963 (finding the following language sufficient to confer discretion: "The *responsibility for* full and *final determinations of eligibility for benefits; interpretation of terms; determinations of claims*; and appeals of claims denied in whole or in part under the HFLAC Group [Home Life] policy rests *exclusively* with HFLAC."); *Bergt v. Ret. Plan for Pilots Employed by MarkAir, Inc.*, 293 F.3d 1139, 1142 (9th Cir. 2002) (finding that a plan conferred discretion because it granted the administrator the "power" and "duty" to "interpret the plan and to resolve ambiguities, inconsistencies and omissions" and to "decide on questions concerning the plan and the eligibility of any Employee" (internal quotation marks omitted)); *Grosz–Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1159 (9th Cir. 2001) (finding that when the administrator "has the full, final, conclusive and binding power to construe and interpret the policy under the plan ... [and] to make claims determinations" discretion has been

conferred (internal quotation marks omitted)).  Stated simply, language of this type is absent in the text of the instant Plan.

In light of the foregoing, the Court finds that the Plan's terms do not unambiguously confer discretionary authority upon Defendant.  Consequently, the appropriate standard of review is *de novo* and no further preliminary analysis regarding a purported conflict of interest is necessary.  *See Abatie*, 458 F.3d at 963.

**IT IS SO ORDERED.**

August 23, 2011

HON. OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE